833 F.2d 1022
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
PROPPER MANUFACTURING COMPANY, INC. Plaintiff-Appellant,
v.
SURGICOT, INC., Defendant-Appellee.
 No. 87-1189
 United States Court of Appeals, Federal Circuit.
 October 8, 1987.
 
 Before DAVIS, Circuit Judge, BALDWIN, Senior Circuit Judge, and EDWARD S. SMITH, Circuit Judge.
 DAVIS, Circuit Judge.
 DECISION
 This is an appeal by Propper Manufacturing Company, Inc. (Propper or appellant), from a November 28, 1986 decision of the United States District Court for the Eastern District of New York, dismissing Propper's complaint that Surgicot, Inc. (Surgicot or appellee), had infringed claims 1, 3, and 5 of Propper's United States Letters Patent No. 4,486,387 ('387 or Augurt patent) issued December 4, 1984. After a bench trial, the District Court (Wexler, J.) issued a memorandum and order concluding, among other things, that claims 1, 3, and 5 of the Augurt patent were not infringed. We affirm.
 
 OPINION
 A. Background.[1]
 
 1
 The claims of the Augurt patent are directed to a disposable test pack that is placed inside a prevacuum high-temperature steam sterilizer to determine if the sterilizer is working properly. The sterilizer initially eliminates air within by drawing a vacuum; then steam is injected to sterilize the contents. In order for steam to perform its sterilization function, air must be eliminated. The claimed test pack consists of a package of disposable nonwoven porous sheets containing a test sheet in the center of the pack. The test sheet changes color when steam hits it, indicating that the steam sterilizer is operating correctly. If the test sheet does not change color, it likely means that air is left over from the vacuum stage and the sterilizer should be checked. The claimed invention is modeled after a test pack known as the Bowie and Dick towel test pack that is constructed of reuseable porous 100% cotton towels of huckaback fabric rather than the porous paper sheets of the Augurt invention.
 
 
 2
 Appellee Surgicot sells a device called STAR Pack also used to test prevacuum steam sterilizers. The Surgicot device consists of a test pack of non-porous, gas impermeable outer layers. This device is patented under U.S. Letters Patent No. 4,576,795.
 
 
 3
 Propper brought an action against Surgicot for alleged infringement of claims 1, 3, and 5 of the Augurt patent. The District Court dismissed Propper's complaint of infringement, but held that the Augurt patent was not invalid for obviousness under 35 U.S.C. Sec. 103. Only the non-infringement holding has been appealed to this court; obviousness of the Augurt invention is not now at issue. Appellant claims that the District Court misinterpreted claim 1 of the '387 patent and thereby erred in determining that the patent was not infringed by the Surgicot STAR Pack. Appellant also argues that the District Court should have found that claims 3 and 5 of the patent in suit were literally infringed, or, in the alternative, were infringed under the doctrine of equivalents.
 
 
 4
 B. Discussion.
 
 
 5
 This case, in essence, revolves around whether the reference to 'porous' material in each of the claims at issue (e.g., claims 1, 3, and 5 of the '387 patent) imposes a limitation on the patent in suit that would distinguish the Surgicot STAR Pack from the invention claimed in the '387 patent. Claim interpretation is a question of law, and this court therefore can review de novo the District Court's conclusions on this matter. McGill, Inc. v. John Zink Co., 736 F.2d 666, 221 USPQ 944 (Fed. Cir.), cert. denied, 469 U.S. 1037 (1984); Fromson v. Advance Offset Plate, Inc., 720 F.2d 1565, 1569, 219 USPQ 1137, 1140 (Fed. Cir. 1983).
 
 
 6
 1. Literal infringement of claims 1, 3, and 5.
 
 
 7
 We cannot agree with appellant's contention that the District Court erred in interpreting claim 1 of the '387 patent by adopting a generic statement of the invention limiting it to its preferred embodiment as found in the specification, rather than applying the specific language of claim 1.[2] We also are not persuaded by appellant's assertion that the District Court incorporated the limitations regarding porosity embodied in claims 3 and 5 into the broader claim 1. On the contrary, we conclude that the District Court merely employed a consistent meaning for the term 'porous' as used in claims 1, 3, and 5. While it is well-settled that 'patent law allows the inventor to be his own lexicographer,' Autogiro v. United States, 384 F.2d 391, 397, 155 USPQ 697, 703 (Ct. Cl. 1967); see also Fromson v. Advance Offset Plate, Inc., 720 F.2d at 1565, 219 USPQ at 1140, there is nothing in the claims at issue to indicate that 'porous' refers to anything other than its ordinary, dictionary meaning. As the District Court recognized, '[t]he words in a claim 'will be given their ordinary and accustomed meaning, unless it appears that the inventor used them differently." Propper Mfg. Co. v. Surgicot, Inc., No. CV-85-1363, slip op. at 13 (E.D.N.Y. Nov. 26, 1986) (quoting Universal Oil Prods. Co. v. Globe Oil & Refining Co., 137 F.2d 3, 58 USPQ 504 (7th Cir. 1943), aff'd, 322 U.S. 471, 61 USPQ 382 (1944)); see also Envirotech Corp. v. A1 George, Inc., 730 F.2d 753, 759, 221 USPQ 473, 477 (Fed. Cir. 1984). Furthermore, the word 'porous' is found in all three claims at issue. Appellant cannot ask that the court interpret the term 'porous' in one manner in claim 1 but differently in claims 3 and 5.
 
 
 8
 After determining that the literal language of each of the claims at issue requires a porous outer region or shell, but that claims 1, 3, and 5 differ in the manner which the porous outer shell is limited, the District Court compared the claims of the '387 patent with the accused device and held that appellee's STAR Pack did not literally infringe claims 1, 3, or 5 of the '387 patent. The District Court concluded that the claims of the patent did not read on the 'non-porous, gas impermeable, unitary, plastic laminated sheet' on the bottom and top of the accused STAR Pack. That is, the District Court held, correctly, that the porous sheets described in the claims of the '387 patent did not include non-porous sheets. See SRI Int'l v. Matsushita Elec. Corp., 775 F.2d 1107, 227 USPQ 577 (Fed. Cir. 1985).
 
 
 9
 Nor did the District Court reach its conclusion in a vacuum. Rather, the court conducted a thorough investigation (in interpreting the claims) by looking not only to the actual language embodied in the claims, but also to the prosecution history and the specification. See Palumbo v. Don-Joy Co., 762 F.2d 969, 226 USPQ 5 (Fed. Cir. 1985). In reviewing the prosecution history, the District Court noted that the patent examiner required Augurt to amend the claims to more particularly point out the difference between the porosity of the porous outer sheets and the porous inner core sheets, both to define the invention and to distinguish it over the prior art (e.g., the Bowie and Dick test pack). Appellant simply cannot have it both ways. Propper cannot define the terms in the invention in one manner during prosecution to seek allowance by the PTO, and then redefine them before the court in another manner to seek infringement. General Elec. Co. v. United States, 572 F.2d 745, 753, 198 USPQ 65, 72 (Ct. Cl. 1978).
 
 
 10
 2. Infringement of claims 3 and 5 under the Doctrine of Equivalents.
 
 
 11
 We also are not convinced by Propper's argument that the District Court erred in failing to find that the Surgicot pack infringed claims 3 and 5 of the Augurt patent under the doctrine of equivalents. In order to prove that the Surgicot pack infringed the '387 patent, it was incumbent on Propper to prove that each element of the accused STAR Pack did 'the same work in substantially the same way and accomplishe[d] substantially the same result' as the corresponding element in the claim. Hughes Aircraft Co. v. United States, 717 F.2d 1351, 1361, 219 USPQ 473, 482 (Fed. Cir. 1983); see also Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608-09, 85 USPQ 328, 330 (1950). To overturn the District Court's finding on this matter, Propper has the burden to demonstrate affirmatively to this court that the District Court's findings were clearly erroneous. Fed. R. Civ. P. 52(a).
 
 
 12
 Even though the District Court recognized that the two inventions were similar, this does not mean that the accused invention necessarily infringes under the doctrine of equivalents. As this court has recognized, for two devices to be substantially equivalent, 'the element substituted in the accused device for the element set forth in the claim must not be such as would substantially change the way in which the function of the claimed invention is performed.' Perkin-Elmer Corp. v. Westinghouse Elec. Corp., 822 F.2d 1528, 1533, 3 USPQ2d 1321, 1324-25 (Fed. Cir. 1987). The District Court specifically found that the plastic laminated sheets of the Surgicot STAR Pack 'act contrary to the porous shell sheets of the '387 claims by blocking rather than permitting the passage of gas.' That is, the court acknowledged that those non-porous sheets caused a gas alignment different from the Augurt invention. The court further found that the two devices had different air/stream flow and bubble locations[3] and that the non-porous laminated sheets of the STAR Pack were substantially dissimilar to the porous paper sheets of the '387 patent.
 
 
 13
 The fact that the District Court found that the patent examiner had required Propper to submit amendments to define more specifically the porosity of the Augurt invention, before issuing a patent, also mitigates against a finding of infringement under the doctrine of equivalents. As a predecessor to this court stated: 'The doctrine of equivalents is subservient to file wrapper estoppel. It may not include within its range anything that would vitiate limitations expressed before the Patent Office.' Autogiro Co. v. United States, 384 F.2d at 400-01, 155 USPQ at 705. Since the PTO required appellants to delineate the porosity of the device during the prosecution of the patent, Propper cannot now claim that the non-porous sheet of the Surgicot device is equivalent to the porous sheets claimed in the Augurt patent. In these circumstances, and in light of the fact that there is testimony in the record to support those findings, we cannot say here that the District Court's findings on the doctrine of equivalents were clearly erroneous. See Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co., 732 F.2d 903, 905, 221 USPQ 841, 842 (Fed. Cir. 1984).
 
 
 
 [1]
 The facts were found by the District Court and are not clearly erroneous
 
 
 [2]
 Claim 1, the broadest claim of the '387 patent, provides as follows:
 A disposable test pack for evaluation of prevacuum steam autoclaves comprising a sterilization test sheet having defined areas adapted to color in response to the presence of steam under pre-selected sterilization conditions, variations in degree of said color change indicating variations in sterilization parameters, a first set of disposable nonwoven porous sheets arranged in overlaying relation positioned above and immediately adjacent the upper face of said sterilization test sheet, a second set of disposable porous sheets arranged in overlaying relation and positioned below and immediately adjacent the lower face of said sterilization test sheet, the innermost sheets of said first and second sets forming an inner core region of said test pack adjacent said sterilization test sheets, said inner core region having a selected height and a porosity, which is different from the porosity of the remainder of the test pack so that the test pack simulates the air entrapping qualities of a Bowie and Dick challenge pack, and means for retaining said first and second sheet sets in close proximity above and below, respectively, said test sheet.
 Claims 3 and 5 differ from claim 1 in the manner in which they define and claim the porosity of the remaining nonwoven porous sheets inside the inner core region.
 
 
 [3]
 A bubble appears on both devices when there is a leak in the sterilizer. The size of the bubble is proportional to the size of leak in the sterilizer